UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SOLOMON FARMS LLC, | § | |
| | § | |
| Appellant, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-467 |
| | § | |
| ROBERT C PATE, | § | |
| | § | |
| Appellee. | § | |

## OPINION

Solomon Farms, LLC (SFarm) owns substantial acreage in eastern Arkansas, with mineral rights it sought to lease to Fayetteville-Floyd Co.[1] for development.  Fayetteville agreed to a lease and issued a draft, allegedly contingent on a determination that SFarm's title to the mineral interests was good and available for lease.  Thereafter, Fayetteville determined that there were title problems, dishonored the draft (along with a number of other drafts that had been issued to other putative lessors), and lawsuits began.[2]  After some adverse rulings, Fayetteville filed for protection under Chapter 11 of the United States Bankruptcy Code.

In the course of the bankruptcy case, SFarm's claim was disallowed.  SFarm filed a motion for reconsideration, complaining that it did not receive proper notice of the objection to its timely-filed claim, the hearing date, or the order sustaining the objection.

---

[1]  At the time the lease was negotiated, the oil company was named David H. Arrington Oil & Gas, Inc.  Just prior to filing for relief under the United States Bankruptcy Code, the company changed its name to Fayetteville-Floyd Co.  Once the company filed bankruptcy, it became a separate legal entity as a "debtor."  For clarity, the company is referred to herein as "Fayetteville" for all purposes.

[2]  *See e.g., Solomon Farms, LLC v. David H. Arrington Oil & Gas Inc*., No. CV-2009-432, in the Circuit Court of Phillips County, Arkansas, Civil Division.  D.E. 2-54.

This matter was to be heard in two phases: (1) a determination of whether the order sustaining Fayetteville's objection to SFarm's claim was subject to being reopened, based on notice and procedural issues; and (2) whether, if reconsidered on its merits, the objection to SFarm's claim should be sustained, based on a defect in SFarm's title to lease the minerals. Only if SFarm prevailed in the first phase would the Bankruptcy Court take up the second phase.

In the first phase, the Bankruptcy Court granted summary judgment against SFarm, holding that SFarm had sufficient actual or constructive notice of the treatment of its claim, that its delay in filing for rehearing was inexcusable and prejudicial, and that the Bankruptcy Court's order was res judicata. Thus SFarm was not entitled to reconsideration of the order as a matter of law. SFarm appeals that determination to this Court. Whether SFarm is entitled to relief on the merits of its claim, based on its claim of good title to the mineral interests, is not before the Court.

For the reasons set out below, the Court AFFIRMS the Bankruptcy Court's summary judgment in favor of Fayetteville.

## SUMMARY JUDGMENT REVIEW

Pursuant to Bankruptcy Rule 3008, the Bankruptcy Court may reconsider an order disallowing a claim and enter an appropriate order. Under 11 U.S.C. § 502(j), a reconsidered claim may be allowed for cause.[3] On September 19, 2013, and as supplemented on August 20, 2014, SFarm filed its Motion to Reconsider its claim for

---

[3] SFarm argues that the Bankruptcy Court's power was plenary, governed only by Rule 3008 and § 502(j), with no limits imposed by Federal Rule of Civil Procedure 60. D.E. 2-47, p. 6. *See* Bankruptcy Rule 9024 (excepting the reconsideration of an order disallowing a claim that was entered without contest from the limits of Rule 60). Fayetteville does not argue that the Bankruptcy Court's ability to rule on the matter was circumscribed by any aspect of Rule 60.

cause, citing three issues related to its failure to defend against Fayettesville's challenge to its claim:  (1) lack of notice of the objection to its claim; (2) lack of notice of the order disallowing the claim; and (3) the hospitalization and rehabilitation of SFarm's Manager during relevant times.   D.E. 2-6, p. 12; D.E. 2-30.   Considering these issues, SFarm sought relief "based on the equities of the case."   D.E. 2-30.   On October 10, 2013, Fayetteville objected to reconsideration of SFarm's claim.   D.E. 2-6, p. 14.   The Bankruptcy Court entered scheduling orders, establishing deadlines for discovery and briefing and setting a pre-trial conference date. *E.g.,* D.E. 2-6, pp. 15-16.

On August 20, 2014, Fayetteville sought a comprehensive summary judgment.  It argued that SFarm could not state a basis for reconsidering the claim because there was no disputed issue of material fact and:  (1) SFarm was given proper notice of the objection and hearing; (2) SFarm had sufficient notice of the order sustaining the objection; and (3) David Solomon's hospitalization and rehabilitation occurred after the events surrounding the disallowance of SFarm's claim.  Fayetteville added that reopening the Plan of Reorganization to accommodate SFarm's claim (if allowed) would be prejudicial to the Debtor and other Creditors, thus weighing against relief in equity.  D.E. 2-71, pp. 2, 13 (Motion); D.E. 2-72 (Supplement).

The Bankruptcy Court granted summary judgment in favor of Fayetteville on both notice issues and on the health issue.  The Bankruptcy Court agreed with Fayetteville that any relief would be prejudicial to the plan sponsors and creditors with allowed claims.  Going further, the Bankruptcy Court held that the order disallowing SFarm's claim was res judicata.  As discussed below, this Court agrees with the summary judgment rulings

against SFarms on the bases for its requested reconsideration.  For that reason, this Court does not reach Fayetteville's additional issue of prejudice or the Bankruptcy Court's additional issue of res judicata.

This Court reviews summary judgments issued by a bankruptcy court de novo. *Jones v. NCNB Texas, N.A. (In re Jones)*, 143 B.R. 687, 689 (S.D. Tex. 1991).  In making that review, "the rules governing the granting of a summary judgment remain the same." *Id*.  All questions of fact are "viewed in the light most favorable to the non-movant. Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law."  *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark)*, 88 F.3d 311, 314 (5th Cir. 1996).

## FACTS

**Filing of Chapter 11 and Proofs of Claim**.  On May 24, 2012, Fayetteville filed for bankruptcy relief.  D.E. 2-3.  SFarm timely filed a proof of claim on July 16, 2012, for $965,000.00, with David Solomon signing as manager of the company and listing P.O. Box 490, Helena, Arkansas 72342 (POB 490) as his address for notices.  D.E. 2-9.  On the same date, Ollie M. McWilliams filed a Proof of Claim, filling out the form with "David Solomon, Attorney" as the contact for notice, using POB 490 and the same phone number as listed on the SFarm claim.  D.E. 2-22.   The same was apparently true for the McWilliams Revocable Trust (MRT).  D.E. 2-23, p. 14.  No one on behalf of SFarm, McWilliams, or MRT signed up for notices under the Court's CM/ECF system and no one on their behalf filed a Notice of Appearance, requesting all notices.  D.E. 2-31, p. 17.

On July 19, 2012, SFarm (Attn: David Soloman [sic] at POB 490) was appointed to the Official Committee of Unsecured Creditors (OCUC) as one of the largest creditors of the Fayetteville bankruptcy case.  D.E. 2-10.  David Solomon attested that his son, David P. Solomon, was the company's representative in the bankruptcy case, but the address for notices remained that of David Solomon, the father.  D.E. 2-30, p. 14; D.E. 2-31, p. 17.  David P. Solomon's deposition testimony confirmed this.  D.E. 2-32, pp. 2-3.

**Claim Objections on Documentation**.  Claiming insufficient documentation of claims, on September 21, 2012, Fayetteville filed its Third Omnibus Objection (D.E. 2-23),[4] objecting to a large number of claimants, including the claims of McWilliams and MRT (but not SFarm).  Notice of that objection was sent on the same date to "Solomon Farms, Inc." and to McWilliams and MRT in care of "David Solomon," all three at POB 490.  In response, on October 30, 2012, David Solomon, as attorney for MRT, filed objections and additional documentation for the MRT claim.  D.E. 2-25.  The record on appeal does not reflect what additional documentation, if any, was supplied for the McWilliams claim.  Nonetheless, by order of October 30, 2012, the McWilliams and MRT claims survived that objection.  D.E. 2-26.

Also on September 21, 2012, Fayetteville filed its Fourth Omnibus Objection (D.E. 2-50), objecting to another batch of claims—including that of SFarm—on the basis of a lack of documentation.  This objection was served on SFarm at POB 490 and prompted SFarm to file an amended claim on October 15, 2012, adjusting the claim to $961,950.00, and attaching copies of an Oil and Gas Lease, with Addendum, and the

---

[4]   It appears that Fayetteville filed several separate, nearly identical, omnibus objections challenging large groups of claimants in alphabetical order.

unpaid draft in the amount of the claim.  D.E. 2-11; D.E. 2-50, p. 11.  By order of November 1, 2013, the SFarm claim survived that objection.  D.E. 2-51.

**Claim Objection on the Basis of SFarm's Title to Lease Minerals**.   On November 27, 2012, Fayetteville objected to SFarm's claim again, alleging that the contract, construed together with the bank draft, contained a condition precedent that was not met, and an evidentiary hearing was set to adjudicate the matter.  D.E. 2-12.  This objection and the notice of hearing were served on "Solomon Farms, Inc." at POB 490, according to the certificate of service reflecting individual service and according to the mailing matrix, attached to the objection.  D.E. 2-12, p. 10, 11; D.E. 2-13.

David Solomon testified that he did not receive the notice of this objection to SFarm's claim, which challenged its title to leased minerals.  D.E. 2-31, p. 22.  However, SFarm did not adduce evidence that the notice had not been sent as indicated.  Rather, Paralegal Shaun Jones and Legal Secretary Linda Salyer testified that they were responsible for mailing the objection and notice of hearing for Fayetteville's counsel, that they did in fact mail it as reflected in the certificate of service, and that no such mailing was returned to their office as undeliverable.[5]  D.E. 2-36; D.E. 2-43.  *See also*, D.E. 2-44; D.E. 2-53.

The Bankruptcy Noticing Center (BNC) also served the Order Setting Hearing for the objection to SFarm's claim on MRT, c/o David Solomon, at POB 490 by first class mail.  D.E. 2-14.  David Solomon testified that, despite being listed as MRT's counsel, he

---

[5]   While there were instances in which Fayetteville's mail to SFarm was addressed to an incorrect Post Office Box—790 or 709 rather than 490—there is no evidence of the use of the incorrect address after August 17, 2012, which includes all mailings at issue in this appeal.  D.E. 2-52, 2-53.

forwarded mail regarding the bankruptcy case that was addressed to MRT to the McWilliams family without opening it.  D.E. 2-31, p. 7-8.  He justified that by saying that he acted as MRT's counsel on a pro bono basis only, and only participated for McWilliams and MRT to get their claim filed, and to correct his mistake in failing to include documentation with the original claim.  *Id*.

SFarm did not appear at the hearing to defend its claim.  Fayetteville, however, appeared and its evidence in support of problems with SFarm's title to the leased acreage was admitted.  D.E. 2-15 through D.E. 2-20.  The Bankruptcy Court found that notice of the objection and hearing were provided to SFarm, then sustained Fayetteville's objection, disallowing the claim on January 7, 2013.  D.E. 2-21.

There is no evidence that a copy of this order was sent to SFarm in its own name, and David Solomon testified that he did not receive it.[6]  D.E. 2-21, D.E. 2-31, p. 22.  If SFarm had gotten notice, he said, it would have hired a lawyer immediately to complain about the fact that SFarm had not received notice of the objection or of the hearing.  D.E. 2-31, p. 23.  Notice of the "Order Sustaining Debtor's Objection to Proof of Claim #7 of Solomon Farms, LLC" was, however, sent by BNC on January 9, 2013, by first class mail to MRT, in care of David Solomon at POB 490.  D.E. 2-21.

**OCUC and Plan Negotiation**.  David P. Solomon continued to be included in the activities of the OCUC, including events after the SFarm claim was disallowed.  In approximately January and March of 2013, there were meetings and quite a bit of talk

---

[6]   While David Solomon's file contained copies of notices at issue in this appeal, he testified that they had been obtained through his research after he learned about the disallowance of the claim on or about July 24, 2013, over six months after the fact.  D.E. 2-31, p. 10.

about trying to change venue of the Fayetteville bankruptcy case to Arkansas.  D.E. 2-32, p.p. 8-9.  It is undisputed that, upon disallowance of SFarm's claim, SFarm and its representative David P. Solomon should not have been permitted to participate on the OCUC.

At the first of June 2013, the OCUC, including David P. Solomon representing SFarm, voted unanimously to accept the negotiated settlement by which active lease claims were to receive approximately 70% of their respective claims through the Chapter 11 Plan.  D.E. 2-32, pp. 4, 8.  At that time, David P. Solomon wanted confirmation of SFarm's claim and proposed payout, but was told that the list had not been drawn up.  *Id*. The proposed plan was filed June 19, 2013, containing lists of active creditors, none of which included SFarm.  D.E. 2-65 through 2-70.

On June 21, 2013, on the basis of the negotiated Plan, the Bankruptcy Court approved of Fayetteville's Disclosure Statement, fixed a deadline of July 23, 2013, as the deadline for creditors to vote on whether the Plan should be confirmed, and set the hearing for Plan confirmation on July 29, 2013.  D.E. 2-27.  That order was sent to McWilliams and MRT c/o David Solomon and to SFarm, all at POB 490 by first class mail. *Id*.

**Learning of the Disallowance of SFarm's Claim**.  Prior to (a) the OCUC acceptance of the negotiated settlement, (b) the filing of the Chapter 11 Plan as Corrected, and (c) the approval of the disclosure statement, David P. Solomon reported by email dated May 21, 2013, that he had received two court notices that concerned him. The first continued a hearing on a motion to transfer venue.  He remarked that he was

surprised that the venue issue was still alive.  The second was a continuance of the exclusive period for Fayetteville to propose its plan of reorganization.  He acknowledged that the reason given for the extension of time was Fayetteville's objections to the claims of Arkansas landowners.  D.E. 2-37.  He also noted that there had been a two-day settlement negotiation with the OCUC of which he had not been made aware.  He indicated that he was in the process of trying to find out exactly what was going on with the Arkansas landowner claims and the OCUC.  *Id*.

About a week later, on May 29, 2013, Rayman Solomon asked David P. Solomon if their father was correct in thinking that they may get 70 cents on the dollar.  David P. Solomon responded that he thought their father was incorrect and he was afraid they would be in the 5% tier of creditors, suggesting that his father did not understand the situation.  D.E. 2-38.  On June 20, 2013, David P. Solomon reported to his brothers that "A large group [of claims] was thrown out for failure to respond to the Debtors [sic] objections."  D.E. 2-39.  In response, Rayman Solomon again asked if their claim was still active.  David P. Solomon's response was that the formal notice and ballot would soon be available, and because he was getting court notices "all the time," their claim must be "in there somewhere."  D.E. 2-39.  He indicated that he would check the mail when he got to Helena "next week."  *Id*.

Sometime on or before July 24, 2013, David P. Solomon was preparing to participate in a meeting of the OCUC by telephone and he sent an email asking for a change in the time of the meeting so that he could catch a flight from Arkansas to New York and still participate in the meeting.  In response, he learned that he was given notice

of the meeting by mistake and that he was no longer a member of the OCUC because SFarm's claim had been denied.  D.E. 2-31, p. 17; D.E. 2-32, pp. 4, 8.  Soon thereafter, he notified his brother and confronted his father, who appeared to be surprised.  *Id.*; D.E. 2-33, p. 4.

At that time, they knew that the Chapter 11 Plan was pending confirmation and they had a limited time in which to act to try to get their claim reconsidered.  D.E. 2-33, pp. 4-5.  By July 30, 2013, the Solomon brothers had checked with known counsel who did not and would not represent them in the Texas bankruptcy case and they began efforts to get a referral for local counsel in Corpus Christi.  D.E. 2-40.

**Plan Confirmation and Consummation**.  By order dated August 14, 2013, containing copious findings of fact and conclusions of law, the Bankruptcy Court confirmed Fayetteville's Chapter 11 Plan.  D.E. 2-28.  That order included a copy of the Plan (*id.*, pp. 30-59), to which several lists of live claimants were attached.  *Id.*, pp. 60-74.  SFarm, McWilliams, and MRT do not appear on any of the creditor lists.  That order was served by first class mail through BNC on McWilliams, MRT, and SFarm, all at POB 490.  D.E. 2-28, pp. 80, 82.  On or about September 17, 2013, the Plan was funded and creditors whose claims were included in the Plan were paid pursuant to the terms of the Plan.  *E.g.*, D.E. 2-29; D.E. 2-46; D.E. 2-72.

**The Motion for Reconsideration and Proceedings Below**.  On September 19, 2013, SFarm filed a motion for reconsideration (D.E. 2-30) pursuant to Bankruptcy Rule 3008 and 11 U.S.C. § 502(j), claiming that it did not get notice of the second objection to its claim, the hearing, or the resulting default order disallowing the claim, and that David

Solomon had experienced health problems that kept him from the office for a short time.[7] Attached to the motion was the affidavit of Jada Haggins, secretary to David Solomon, who attested that she would check the mail when David Solomon did not or could not do so himself.  She stated that she had not seen the objection, notice of hearing, or order sustaining the objection to the SFarm claim.  D.E. 2-30, pp. 11-12.  Likewise, David Solomon attested that he had not received notice of the second objection and hearing or notice of the default order until David P. Solomon learned of it months after the fact. D.E. 2-30, pp. 14-15.  He also testified that SFarm had good title to the minerals leased to Fayetteville.  *Id*.

The dispute was bifurcated, with the Bankruptcy Court first considering whether SFarm was entitled to reconsideration and setting aside the issue of whether its proof of claim should have been allowed on the basis of its good mineral interests.  After an evidentiary hearing on the first phase, the Bankruptcy Court found that SFarm had notice of all necessary components of the process and, even if it did not get notice, it had failed to show that it was entitled to relief because of issues of delay and prejudice.  The Bankruptcy Court also held that SFarm's issues were barred by res judicata.  SFarm now appeals the determination of the first phase to this Court.

## DISCUSSION

The motion for reconsideration raised the following issues, each of which was challenged by summary judgment:  (a) notice of the objection and hearing on same; (b) notice of the order sustaining the objection to the claim; and (c) health problems affecting

---

[7]   According to the evidence, David Solomon was hospitalized for a fall and was in rehabilitation in February and March 2013—after the January 7, 2013 hearing and order disallowing SFarm's claim.  D.E. 2-31, p. 4; D.E. 2-42.

the prosecution of the claim.  Each of those challenges is addressed below.  Because of the Court's determination of those issues, it need not reach Fayetteville's challenge on the issue of prejudice precluding equitable relief or the Bankruptcy Court's sua sponte application of res judicata.

### A.  Notice of the Objection and Hearing.

With respect to notice of an objection to claim and hearing thereon, the parties advance different notice requirements arising from two competing rules.   First, Bankruptcy Rule 3007(a), which is applicable to "objections to claims," simply requires notice to the claimant.   In contrast, Bankruptcy Rule 9014(b), which is applicable to "contested matters," requires service pursuant to Bankruptcy Rule 7004(b)(3), which requires that the notice be addressed to an officer, manager, or agent of the party.   The debate regarding which notice provision applies arises because an "objection to a claim" is a "contested matter."   *In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985).

The *Simmons* opinion, on which SFarm relies, was actually concerned with the status of a claim when no objection of any kind was filed prior to confirmation of a plan of reorganization.   While it describes a "claim objection" as initiating a "contested matter," it did not make that statement in connection with, or as governing, any issue regarding notice procedures.   The *Simmons* opinion does not attempt to resolve the apparent conflict.   Contrary to SFarm's interpretation of the case, *Simmons* equates the proof of claim with a civil complaint; the objection is like an answer.   Under such an analysis, service in a summons-like manner would not be required for the objection

which is like an answer.  Nonetheless, the Fifth Circuit has not squarely addressed the notice requirement.

As set out above, it is undisputed that Fayetteville sent notice of the objection and hearing to SFarm at its general address, without specifying an individual recipient.  This appears to be fully consistent with Bankruptcy Rule 3007.  SFarm argues that it was entitled to notice directed to its manager, David Solomon, according to Bankruptcy Rule 9014(b), as it incorporates Rule 7004(b)(3).

According to Bankruptcy Rule 3007(a), entitled "Objection to Claims,"

> An objection to the allowance of a claim shall be in writing and filed.  A copy of the objection with notice of the hearing thereon shall be ***mailed or otherwise delivered to the claimant***, the debtor or debtor in possession, and the trustee at least 30 days prior to the hearing.

(emphasis added).  Here, there is no request for affirmative relief[8] and Fayetteville initiated an ordinary claim objection proceeding.  It would appear that nothing special is required with respect to the Rule 3007 notice.

Despite that appearance, a number of courts that have confronted the conflict between the rules have held that, through Bankruptcy Rule 9014(b)'s application to contested matters, service of an objection to claim by mail must be directed to "the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process . . ." as required by Bankruptcy Rule 7004(b)(3).  *E.g., In re Perez*, 2011 WL 5546959, *2 (Bankr. W.D. Tex. 2011); *In re*

---

[8]  If the debtor seeks affirmative relief of the kind listed in Bankruptcy Rule 7001, the objection can be included in an adversary proceeding seeking that affirmative relief.  But such affirmative relief is not permitted in the proceeding on an ordinary objection to a claim.  Bankruptcy Rule 3007(b).

*Boykin*, 246 B.R. 825, 828 (Bankr. E.D. Va. 2000); *In re Rushton*, 285 B.R. 76, 81 (Bankr. S.D. Ga. 2002).

The Bankruptcy Court here, relying on *In re Anderson*, 330 B.R. 180, 185-86 (Bankr. S.D. Tex. 2005), acknowledged the conflict in authorities and concluded that such service under Rule 7004 was not necessary.  This Court agrees.  By filing a proof of claim, the creditor submits to the jurisdiction of the Bankruptcy Court for a determination of the claim's validity and treatment.  *In re Hawthorne*, 326 B.R. 1, 5 (Bankr. D.D.C. 2005).  In its proof of claim, each claimant is given an opportunity to designate where notices should be sent.  Bankruptcy Rule 9009, Official Form 10.  Here, SFarm listed POB 490 as that place for notices to be sent, without specification of any individual officer, manager, or agent.  *See* D.E. 2-9, 2-11.

Bankruptcy Rule 3007(a) requires that an objection to claim be mailed "to the claimant."  While it is undisputed that an objection to a claim initiates a "contested matter," the procedure for giving notice of a contested matter, starts out, "In a contested matter ***not otherwise governed by these rules***, relief shall be requested by ***motion*** . . . ." Bankruptcy Rule 9014(a) (emphasis added).  Claim objections are "otherwise governed by" Bankruptcy Rule 3007.  Thus Rule 9014, by its own terms, has no actual or practical application to the question of notice of an objection to claim.  None of the arguments of these parties or of those in the competing cases include the suggestion that a Rule 3007 objection to claim must also be accompanied by a Rule 9014 motion.

Rule 9014(b), by which SFarm argues Rule 7004(b)(3) is triggered, applies to service of a "motion."  It has no express application to the service of an "objection."  This

construction, which gives effect to the more specific terms of Rule 3007 over the more general terms of Rule 9014, is consistent with general rules of statutory construction. *E.g.*, *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) (a specific statute will not be controlled or nullified by a general one).

Even without resort to rules of construction, the goal is to give "reasonable notice and opportunity for hearing." Bankruptcy Rule 9014(a). That goal is met by providing notice at the address provided by the claimant, whether or not the claimant specifies a particular individual to receive that notice.

> The United States Supreme Court has held that notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted); *In re Christopher*, 28 F.3d 512, 516 and 519 (5th Cir. 1994). Counsel for the Debtors sent notice by U.S. mail to Movant at the address which Movant itself provided on its proof of claim expressly for the purpose of receiving notice. Notice to such address meets the requirements of Bankruptcy Rule 3007, which the courts require as a minimum standard. *In re Laurah Ann Morton*, No. 02–10507, 2003 WL 23744636, at *2, 2003 Bankr. LEXIS 1464, at *4 (Bankr. N.D. Tex. Nov. 10, 2003).

*Anderson,* 330 B.R. at 185-86. To require a debtor or trustee to research registered agents and corporate officers to provide notice of an objection to a claim to an address or individual not listed in a Form 10 proof of claim designation of address for notice would create unnecessary conflict and require an unnecessary expenditure of time and money in a case where there is, by definition, no money to spare.

Not only did Fayetteville give notice of the objection and the hearing date at the address provided on SFarm's proof of claim, but David Solomon was the only individual receiving mail at that address.  He is SFarm's manager and he alone determined what was done with each piece of mail that arrived at his office during the time frame at issue here. D.E. 2-31, p. 23; D.E. 2-32, p. 3; D.E. 2-41.  SFarm has not demonstrated that including "David Solomon, Manager" along with "Solomon Farms, Inc." on the envelope would have made any difference, whatsoever.  The Court holds that Fayetteville sent SFarm adequate notice of the objection and hearing regarding its claim by sending it to POB 490 despite not specifying the individual to whose attention it was mailed.

SFarm tries to raise a disputed issue of material fact by denying having actually received the notice of Fayetteville's objection and the hearing setting.  To state a due process objection to notice sent by mail, SFarm must overcome the presumption that items placed in the mail, properly addressed and with postage pre-paid, gave sufficient notice.  *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 735 (5th Cir. 1995).  Denying receipt, alone, is insufficient.  *Id.*

Necessary corroborative proof would include some defect in the mailing procedure, inconsistency in the certificate of service, or evidence that others on the service list did not receive the notice either.  SFarm does not offer any such evidence. Instead, it speculates that address issues that affected earlier notices to SFarm might have affected this one.  However, the evidence reflects the use of the correct address. Otherwise, SFarm's position on notice is tied entirely to the issue of how the envelope was required to be addressed—a position considered and rejected above.

The evidence is undisputed that Fayetteville sent its objection to SFarm's claim to an address that the Court deems proper—Solomon Farms, Inc. at POB 490.  Fayetteville has submitted consistent certificates of service, along with the affidavit and deposition testimony of its paralegal and secretary who handled mail-outs, as well as logging returned mail.  Together, this evidence shows that the notice of objection and hearing were properly addressed and mailed to SFarm as a matter of law.  The Court holds that SFarm has not sustained its burden to overcome the presumption of proper mailing and service and there is no fact issue to resolve.

**B.  The Notice of the Order Sustaining the Objection.**

Having held that the notice of objection was sufficient, the question now becomes what type of notice SFarm was entitled to with respect to the default order that sustained Fayetteville's objection to its claim and whether it received that notice.  A bankruptcy court's allowance or disallowance of a proof of claim is a final judgment, just like a final judgment in a civil action.  *In re Eads*, 417 B.R. 728, 741 (Bankr. E.D. Tex. 2009).  In a civil action,

> Immediately after entering an order or judgment, the clerk must serve notice of the entry, as provided in Rule 5(b), on each party who is not in default for failing to appear.  The clerk must record the service on the docket.  A party also may serve notice of the entry as provided in Rule 5(b).

Fed. R. Civ. P. 77(d)(1).  According to the Second Circuit, the rules relieving the parties and the court from giving notice of an order or judgment to parties who are in default do not apply here.  "These provisions are clearly intended to apply only to parties who have never made an appearance; they are inapplicable where a party has failed to make an

appearance at some subsequent stage of proceedings.  *Radack v. Norwegian Am. Line Agency, Inc*., 318 F.2d 538, 542 (2d Cir. 1963).

While Federal Rule of Civil Procedure 77 is incorporated by reference into the Bankruptcy Rules with respect to orders entered by District Judges, a different (although similar) rule applies to Bankruptcy Judge rulings:

> Immediately on the entry of a judgment or order the clerk shall serve a notice of entry in the manner provided in Rule 5(b) F. R. Civ. P. ***on the contesting parties*** and on other entities as the court directs. . . .  Service of the notice shall be noted in the docket.  Lack of notice of the entry does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 8002.

Fed. R. Bankr. P. 9022(a).  *See also* Fed. R. Bankr. P. 9022(b).  This rule makes no exception for parties in default.  And the reference to Federal Rule of Civil Procedure 5(b) is exclusive of Rule 5(a), which provides that parties in default need not be served.

The Bankruptcy Rule specifically requires notice to "contesting parties." Contesting parties would naturally include those on opposite sides of a "contested matter."  And the parties concede that a claim objection proceeding is a "contested matter."  Thus SFarm, as a creditor in a claim objection proceeding, was entitled to notice of the order sustaining the objection to its claim, even though it did not appear at the hearing.

It is clear that no notice was specifically sent to SFarm and no entry was made on the docket or in any certificate of service suggesting that it was.  D.E. 2-8, pp. 31-32, 2-21, 2-31, p. 22.  The Bankruptcy Court dismissed the fact that BNC did not send a copy

of the order addressed to SFarm with the observance that SFarm had defaulted and the BNC service was not set up to give notice of such orders.   D.E. 73, p. 3.   This Court disapproves of any systematic failure to give notice to creditors of orders resulting from claim objections, whether or not the creditor has appeared.

The failure to give SFarm direct notice of the disallowance of its claim, however, is not necessarily determinative.   As the Second Circuit discussed with respect to district court orders:

> We do not mean to suggest that the granting of relief under Rule 60(b)(6) is proper in all cases where notice of the entry of judgment is not sent to one of the parties; lack of notice does not *ipso facto* mean that a judgment must, can or should be reopened.   A party may learn of the entry of judgment by reading the Law Journal or may be so informed by opposing counsel.   The rule cannot be used to circumvent the 1946 amendment to Rule 77(d) dealing with the effect of lack of notice on the running of the time for appeal.   Nor is 60(b)(6) relief available for an unlimited time.   The rule is still subject to both the reasonable time limitation and to the proper exercise of discretion by the district court considering all of the circumstances present in a given case.   The granting of such motions should be considered only where lack of notice has operated to prejudice a substantial right or remedy that would otherwise have been available.

*Radack,* 318 F.2d at 542-43 (citation omitted).

Here, notice of the order sustaining the objection to SFarm's claim was sent by BNC on January 9, 2013, by first class mail to MRT, in care of David Solomon at POB 490.   D.E. 2-21.   There is no suggestion that the envelope addressed to MRT did not arrive at POB 490.   Thus David Solomon, manager of SFarm, who had the right and duty to open that envelope on behalf of MRT, had notice of the order as attorney for another

party.  According to his own testimony, rather than taking care to heed that notice, he most likely forwarded the notice to his client without opening the envelope and reading its contents.  D.E. 2-31, p. 7-8.  The Court cannot condone such conduct.

Even apart from the specific notice of the order that was sent to its office, SFarm, as a party to a lawsuit and as a member of the OCUC, had a duty to keep apprised of the progress of the case.  *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 357 (5th Cir. 1993); *Pryor v. United States Postal Serv.*, 769 F.2d 281, 287 (5th Cir. 1985).   Long before July 24, 2013—the date David P. Solomon states he learned of the disallowance of the claim—SFarm had the means to track its claim, its representatives knew that Arkansas landowner claims were being challenged and disallowed for defaulting on the process, and Chapter 11 plans were being proposed and creditor lists circulated for discussion and then for voting.

SFarm wanted and needed to know how its claim was being treated, had disregarded actual notice sent to its mailbox, had failed to consult the docket, and failed to take sufficient action with readily available means.   While David P. Solomon expressed frustration and the feeling of being stonewalled by the OCUC and its attorneys, SFarm failed to produce evidence that it was prevented from accessing public records and other means for getting its questions answered, months before any plan was confirmed. The Court holds that SFarm had adequate notice of the order sustaining Fayetteville's objection to its claim.

**C. No Health Issues Precluded Participation**

While SFarm recited the ill health of David Solomon as one of the reasons it seeks reconsideration, the only health issue in evidence is David Solomon's hospitalization and rehabilitation between February and March, 2013—well after the January 7, 2013 hearing and order disallowing SFarm's claim, including notice thereof.  D.E. 2-31, p. 4; D.E. 2-42.   Otherwise, David Solomon testified to being in good health, fully capable of reviewing his mail and acting upon it.  D.E. 2-31.  SFarm does not press any argument related to David Solomon's health in this appeal and the Court holds that no such issue provides a basis for reconsideration of the order disallowing SFarm's claim.

**D. Conclusion**

As discussed above, the Court agrees with the Bankruptcy Court that SFarm did not demonstrate cause because it had notice of the objection to claim and of the order sustaining that objection and because any health problem of its manager was suffered after the events surrounding the claim's adjudication.  Because the Court rejects all three bases for relief stated in SFarm's motion for reconsideration, the Court AFFIRMS the Bankruptcy Court's Memorandum Opinion and Order on Motion for Summary Judgment (D.E. 2-73), without reaching the issues of prejudice and res judicata.

ORDERED this 20th day of April, 2015.

_Nelva Gonzales Ramos_
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE